UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DAN ABRAHAM,

                    Petitioner,

        v.

KRISTI NOEM et al.,

                    Respondents.

CASE NO. 2:26-cv-00823-DGE

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1)

Presently before the Court is Petitioner Dan Abraham's petition for writ of habeas corpus. (Dkt. No. 1.) Petitioner contends Respondents violated his procedural due process rights by re-detaining him at a routine check-in without giving him prior notice or an opportunity to be heard. (*Id.* at 7.) Respondents argue Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b). (Dkt. No. 4 at 3.) Having considered the petition, Respondent's return (Dkt. No. 4), and Petitioner's traverse (Dkt. No. 7), the Court GRANTS the petition.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 1

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Background

Petitioner is a 28-year-old native and citizen of Eritrea.  (Dkt. No. 1 at 5.)  He entered the United States on December 20, 2022 without inspection or parole, and was subsequently detained by a Customs and Border Protection agent.  (*Id.*; Dkt. No. 5 at 2.)  Petitioner was served a Notice to Appear charging him as removable pursuant to 8 U.S.C. § 1182(a)(6)(A)(i) as a noncitizen present in the United States without being admitted or paroled.[1,2]  (Dkt. Nos. 5 at 2; 6-1 at 2.)  He was then released from immigration custody on an Order of Release on Recognizance in accordance with "section 236 of the Immigration and Nationality Act[.]"  (Dkt. Nos. 5 at 2; 6-2 at 2–4.)  Respondents contend that Petitioner was enrolled in Alternatives to Detention ("ATD") upon release; however, Petitioner's Order of Release does not identify this program.  (*See* Dkt. No. 6-2 at 2–4.)

By releasing him, immigration officials necessarily determined that Petitioner did not present a flight risk or danger to the community.  *See* 8 C.F.R. § 1236.1(c)(8) ("Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien not described in section 236(c)(1) of the Act, under the conditions at section 236(a)(2) and (3) of the Act; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding.").  After his release, Petitioner filed an application for asylum and alleged he

---

[1] The order identifies Immigration and Nationality Act § 212(a)(6)(A)(i), which is codified at 8 U.S.C. § 1182(a)(6)(A)(i).

[2] Enforcement and Removal Operations ("ERO") Deportation Officer Gennadiy Baz testified that "[i]t is unclear if this [Notice to Appear] was filed with the immigration court."  (Dkt. No. 5 at 2.)

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 2

"fully complied with all conditions of supervision imposed by" Immigration and Customs Enforcement ("ICE").  (Dkt. No. 1 at 5.)

On January 28, 2023, Petitioner was arrested for assault.  (Dkt. No. 5 at 2.)  On February 14, 2023, during his ICE check-in, Petitioner was served a new Notice to Appear, which again charged him as removable under 8 U.S.C. § 1182(a)(6)(A)(i).[3]  (*Id.* at 3.)  The assault charge was subsequently dismissed.  (*Id.*; Dkt. No. 1 at 5.)  Officer Baz declared Petitioner accrued multiple ATD violations between December 1, 2023 and November 26, 2025, including 8 missed biometric check-ins, 3 missed in-person office visits, 3 times where he was not present for a scheduled home visit, once where Petitioner's GPS monitor reported a tamper, and twice where Petitioner checked in outside the permitted geographic zone.  (Dkt. No. 5 at 3–4.)

On December 10, 2025, Petitioner appeared at his regularly scheduled ICE check-in. (Dkt. Nos. 1 at 5; 5 at 4.)  The I-213 Form states "[r]outine systems queries indicated [Petitioner] had violated the conditions of release under the [ATD] program" and ERO management "approved a custody redetermination to bring [Petitioner] back into custody."  (Dkt. No. 6-3 at 3.)  Petitioner alleges "he regularly complied with the reporting requirements through the ICE reporting application, including submitting weekly facial verification photographs as instructed, and attempted to return the missed calls, but received no response from ICE officers."  (Dkt. No. 1 at 5–6.)  ICE officers executed Petitioner's arrest warrant[4] and subsequently transported him to the Northwest ICE Processing Center, where he remains today.  (Dkt. Nos. 1 at 6; 6-3 at 3; 6-4 at 2.)  Petitioner's Order of Release was cancelled on the same day.  (Dkt. No. 6-2 at 2.)

---

[3] This Notice to Appear was filed with the immigration court on February 14, 2023.  (*Id.* at 3.)

[4] The arrest warrant was authorized pursuant to "sections 236 and 287 of the Immigration and Nationality Act and part 287 of title 8, Code of Federal Regulations."  (Dkt. No. 6-4 at 2.)

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 3

Petitioner's immigration case is set for a final hearing on his application for relief from removal before an immigration judge on April 23, 2026. (*Id.*)

**B. Procedural Background**

Petitioner filed a petition for writ of habeas corpus on March 11, 2023, arguing Respondents violated his procedural due process rights under the Fifth Amendment by revoking his Order of Release without prior notice and an opportunity to be heard. (Dkt. No. 1.) Pursuant to the Court's scheduling order (*see* Dkt. No. 2), Respondents filed a return on March 26, 2026 (Dkt. No. 4). Respondents assert two arguments for why Petitioner's re-detention was proper. First, Respondents contend Petitioner was re-detained "as a result of numerous violations of release." (*Id*. at 2.) Second, Respondents assert Petitioner is subject to mandatory detention under 8 U.S.C. §1225(b). (*Id*. at 3–6.) Alternatively, Respondents contend that Petitioner is entitled only to a *post*-deprivation hearing as a basis for relief. (*Id*. at 7.)

Petitioner filed a traverse on March 31, 2026 (Dkt. No. 7.)

**II.    LEGAL STANDARD**

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST., Art. I, § 9, cl. 2). To succeed on his habeas petition, Petitioner "must show [he] is in custody in violation of the Constitution or laws or treaties of the United States." *Doe v. Bostock*, No. C24-0326-JLR-SKV, 2024 WL 3291033, at *5 (W.D. Wash. Mar. 29, 2024), *report and recommendation adopted*, No. C24-0326JLR-SKV, 2024 WL 2861675 (W.D. Wash. June 6, 2024) (citing 28 U.S.C. § 2241). Because habeas proceedings are civil in nature, the "[p]etitioner 'bears the burden of proving that he is being held contrary to law, . . . [and] he must satisfy his burden of proof by a preponderance

of the evidence.'" *Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025) (quoting *Freeman v. Pullen*, 658 F. Supp. 3d 53, 58 (D. Conn. 2023) (citations omitted)).

### III.    ANALYSIS

Petitioner argues Respondents revoked his release and deprived him of his liberty without affording him any written notice or meaningful opportunity to be heard prior to re-detention, in violation of the Due Process Clause of the Fifth Amendment. (Dkt. No. 1 at 12.)

**A. Petitioner is Not Detained Under 8 U.S.C. § 1225(b)**

At the outset, Respondents argue Petitioner is subject to mandatory detention under expedited removal proceedings pursuant to 8 U.S.C. § 1225(b). (Dkt. No. 4 at 3–6.)

Section 1225 applies to "applicants for admission" to the United States, who are defined as a noncitizen "present in the United States who has not been admitted or who arrives in the United States . . . ." 8 U.S.C. § 1225(a)(1). Applicants for admission fall into two categories. *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). Section 1225(b)(1) applies to individuals initially determined to be inadmissible due to fraud, misrepresentation, or a lack of valid documentation. On the other hand, § 1225(b)(2) "serves as a catchall provision that applies to all applicants for admission not covered by" § 1225(b)(1). *Jennings*, 583 U.S. at 287. Persons falling within § 1225(b) are subject to mandatory detention. *See* 8 U.S.C. § 1225(b)(1)(B) *and* § 1225(b)(2)(A). Individuals detained under § 1225 can only be paroled into the United States "'for urgent humanitarian reasons or significant public benefit.'" *Jennings*, 583 U.S. at 300 (quoting 8 U.S.C. § 1182(d)(5)(A)).

In contrast, 8 U.S.C. § 1226(a) is broader than its counterpart and is the "default rule" for noncitizens present in the United States who are arrested and placed in immigration detention.

*Jennings*, 583 U.S. at 303.  Section 1226(a) permits the government to release a detainee on bond during the pendency of the detainee's removal proceedings.  *Id.*

Here, the Court finds Respondents' argument that Petitioner is detained pursuant to § 1225(b) inconsistent with the factual record.  First, the clear text of Petitioner's Order of Release on Recognizance states he is being released "[i]n accordance with section 236 of the Immigration and Nationality Act and the applicable provisions of Title 8 of the Code of Federal Regulations."  (Dkt. No. 6-2 at 2.)

Second, Petitioner's December 21, 2022 Notice to Appear identifies that he is a noncitizen "present in the United States who has not been admitted or paroled," not "an arriving alien."[5]  (Dkt. No. 6-1 at 2.)  Notably, the issuing officer explicitly declined to designate Petitioner as an "arriving alien," (*see id.*), which is the active language used to define the scope of § 1225(b)(2)(a) in its implementing regulation.  8 C.F.R. § 235.3(c)(1) ("Except as otherwise provided in this chapter, any *arriving alien* who appears to the inspecting officer to be inadmissible, and who is placed in removal proceedings pursuant to [§ 1229a] shall be detained in accordance with [§ 1225(b)].") (emphasis added); *see also Martinez v. Hyde*, 792 F. Supp. 3d 211, 218 (D. Mass 2025) (concluding "arriving alien" language synonymous with § 1225).

Third, individuals subject to § 1225 can only be released for "urgent humanitarian reasons or significant public benefit."  *Jennings*, 583 U.S. at 300; 8 U.S.C. § 1182(d)(5)(A).  Petitioner was released on his own recognizance with no finding the release was based on "urgent humanitarian reasons" or for "significant public benefit."  (*See* Dkt. No. 6-2 at 2.)

Fourth, Petitioner was released on an order of recognizance.  (*Id.*)  An order of recognizance is issued when a detainee is released pursuant to § 1226.  *See Ortega-Cervantes v.*

---

[5] Respondents did not provide a copy of Petitioner's February 14, 2023 Notice to Appear.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 6

*Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007) ("It is apparent that the INS used the phrase "release on recognizance" as another name for "conditional parole" under § 1226(a).").

Fifth, Petitioner was re-detained, and his Order of Supervision was revoked *pursuant* to 8 U.S.C. § 1226. (*See* Dkt. Nos. 6-4 at 2; 6-5 at 2.) As Petitioner points out, the government should be bound by the legal authority it invoked at the time of arrest. (Dkt. No. 7 at 4.)

Finally, Officer Baz makes no mention that Petitioner was taken into custody or that he remains in custody based on § 1225. (*See* Dkt. No. 5.) Instead, Officer Baz identifies Petitioner as being detained because he had a history of ATD violations. (*Id.* at 4.) This is the only basis identified as the reason for Petitioner's current detention.

Accordingly, the Court finds Petitioner is not subject to, nor currently being detained pursuant to, 8 U.S.C. § 1225(b).

**B.  Petitioner's Re-Detention Violated Due Process**

The Due Process Clause protects against deprivation of liberty without proper process, and this protection extends to deportation proceedings. U.S. Const. amend. V. ("No person shall be . . . deprived of life, liberty, or property, without due process of law[.]"); *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)).

The traditional test for evaluating due process claims set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), "can and must account for the heightened governmental interest in the immigration detention context." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong*

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 7

*v. Manzo*, 380 U.S. 545, 552 (1965)).  *Mathews* employs a three-factor test looking at (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest."  *Mathews*, 424 U.S. at 335.

    1.  Private interest

The first *Mathews* factor considers "the private interest that will be affected by the official action."  *Id.*  Courts have continually recognized an immigration detainee's private interest in freedom from imprisonment.  *See Hamdi*, 542 U.S. at 529 (finding freedom from detention "the most elemental" of private interests); *Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."); *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025).  This Court has previously identified that an individual who was initially released from immigration custody is deprived of this private interest in freedom from imprisonment upon a renewed detention.  *See Makuey v. Scott*, No. 2:25-cv-02135-DGE-BAT, 2025 WL 3640900, at *4 (W.D. Wash. Dec. 16, 2025) (finding the petitioner "has now been undeniably deprived of [his interest in liberty] because he was arrested, transferred to the NWIPC, and remains detained today" following an earlier release).

Here, Petitioner was arrested on December 20, 2022 and released on his own recognizance on the same day.  (Dkt. No. 5 at 2.)  As Respondents concede (Dkt. No. 4 at 7), Petitioner "took with him a liberty interest which is entitled to the full protections of the [D]ue [P]rocess [C]lause."  *Ramirez Tesara v. Wamsley*, No. 2:25-CV-01723-MJP-TLF, 2025 WL 2637663, at *3 (W.D. Wash. Sept. 12, 2025); *Makuey*, 2025 WL 3640900, at *4.  Petitioner was

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 8

then at liberty in the community for over three years before he was re-detained. "[I]ndividuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty." *Doe*, 787 F. Supp. 3d at 1093.

Petitioner's strong private interest in his continued liberty means the first *Mathews* factor weighs in his favor.

2. <u>Risk of erroneous deprivation of interest through procedures used</u>

The second *Mathews* factor examines "the risk of an erroneous deprivation of [the petitioner's private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards[.]" *Mathews*, 424 U.S. at 335. Here, the risk of an erroneous deprivation *without any hearing* is high.

To justify Petitioner's re-detention, Respondents assert Petitioner is subject to § 1225 without any support. (*See* Dkt. No. 4 3–6.) Such position shows a clear erroneous basis for Petitioner's detention. And importantly, courts in this district have previously held that the government violates due process when an individual is placed in removal proceedings and released on their own recognizance but is then re-detained without a pre-deprivation hearing. *See Singh v. Noem*, No. 2:26-CV-00079-DGE, 2026 WL 265670 (W.D. Wash. Feb. 2, 2026); *Bello Chacon v. Hermosillo*, No. 2:25-cv-02299-TMC, 2025 WL 3562666, at *4 (W.D. Wash. Dec. 12, 2025); *Kumar v. Wamsley*, No. 2:25-cv-01772-JHC-BAT, 2025 WL 2677089, at *3 (W.D. Wash. Sept. 17, 2025); *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322–1323 (W.D. Wash. 2025).

Respondents argue that because Petitioner had numerous ATD violations, he is entitled only to a *post*-deprivation hearing. (Dkt. No. 4 at 7) (emphasis added). Although "there may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate,"

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 9

*Guillermo M.R. v. Kaiser*, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025) (citing *Zinermon v. Burch*, 494 U.S. 113, 128 (1990)), Respondents offer no basis to conclude Petitioner's circumstances presented such an urgent scenario.[6] All that is provided are allegations that Petitioner violated the terms of ATD release (Dkt. No. 5 at 3), allegations which Petitioner vehemently opposes (*see* Dkt. No. 1 at 5–6).

Respondents rely on *Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767, at *12 (E.D. Cal. Aug. 28, 2025), in support of holding a post-deprivation hearing. (Dkt. No. 4 at 7.) The Court is not persuaded by this argument. Like this case, *Martinez Hernandez* noted there was "a dispute of fact as to whether [Martinez Hernandez] repeatedly violated the terms of his parole" based on alleged ATD violations. 2025 WL 2495757, at *12. And in the court's view, if the government was correct about the ATD violations, "it [was] at least arguable that providing [Martinez Hernandez] with notice and a pre-deprivation hearing would have been impracticable and/or would have motivated his flight." *Id*. Because of this finding, the court found a "prompt, post-deprivation process" was appropriate. *Id*. But in this case, the facts do not support such a finding.

Here, Petitioner disputes the accuracy of the alleged ATD violations. Petitioner reported to ICE as required on February 14, 2023—after he was arrested for an alleged assault in January 2023—and again on December 10, 2025. (Dkt. No. 5 at 2–4.) Respondents do not identify the times Petitioner *did* comply with the ATD check-in requirements during the time periods he allegedly had ATD violations. Furthermore, Petitioner timely filed an application for asylum that remains pending. (Dkt. No. 1 at 2.) These facts do not reasonably support the conclusion

---

[6] Nor is there any evidence in the record Respondents have provided Petitioner—who has been detained for over three months—any post-deprivation hearing.

that a pre-deprivation hearing would have been impracticable and/or would have motivated Petitioner to flee. In addition, while Officer Baz asserts that Petitioner violated the terms of his ATD, none of the supporting documentation reveals any violation. Moreover, the arrest warrant does not refer to the ATD violations, and instead notes that records indicate that "the subject either lacks immigration status or notwithstanding such status is removable under U.S. immigration law[.]" (Dkt. No. 6-4 at 2.) Under the specific facts of this case, the Court finds *Martinez Hernandez* unpersuasive.

Here, Petitioner has had no opportunity to be heard—either before or after his re-detention—on the revocation of his Order of Release. All this poses a risk of erroneous deprivation. *See Doe*, 787 F. Supp. 3d at 1094 ("[G]iven that Petitioner was previously found not to be a danger or risk of flight and the unresolved questions about the timing and reliability of the new information, the risk of erroneous deprivation remains high.") Accordingly, the second *Mathews* factor favors Petitioner.

### 3. Government's interest

The third *Mathews* factor contemplates "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335.

Admittedly, Respondents have an interest in ensuring a noncitizen appears at future immigration proceedings and that a noncitizen does not pose a danger to the community. *Zadvydas*, 533 U.S. at 690. And although requiring a pre-detention process in this case would present some administrative burden, given the high risk of erroneous deprivation and the fundamental liberty interest at stake, providing effectively no pre-detention process—as ICE did here—is constitutionally deficient. The Court acknowledges that the government has a strong

interest in returning noncitizens to custody who violate conditions of release, but there is no indication that providing Petitioner with notice and an opportunity to be heard on the basis for revoking his Order of Supervision would have impaired this interest.

In sum, all three *Mathews* factors favor Petitioner.  Respondents' detention of Petitioner violates the due process protections afforded to him by the Constitution.  Petitioner has proven by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c).

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 12

## IV    CONCLUSION

Accordingly, the Court GRANTS Petitioner's writ of habeas corpus (Dkt. No. 1) and ORDERS:

1. Respondents and all their officers, agents, attorneys, and persons acting on their behalf or in concert with them SHALL release Petitioner from custody within **ONE (1) day** of this Order. Petitioner shall be returned to the conditions of release identified in his December 20, 2022 Order of Release.

2. Petitioner SHALL NOT be re-detained, absent urgent circumstances or a clear legal basis for detention, without first providing pre-deprivation notice and an opportunity to be heard in front of an immigration judge.

3. Within **TWENTY-FOUR (24) hours** of this Order, Respondents SHALL provide the Court with a declaration confirming Petitioner has been released from custody.

4. Petitioner seeks an award of fees. (Dkt. No. 1 at 13.) Petitioner is GRANTED leave to file a motion for attorney fees. The motion for fees shall identify the legal authority supporting an award of fees and shall be filed **no later than July 1, 2026**.

The Clerk is directed to calendar this event and close the matter.

Dated this 2nd day of April, 2026.

David G. Estudillo
United States District Judge

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 13